

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-1-2006

# Tjandra v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2970

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Tjandra v. Atty Gen USA" (2006). *2006 Decisions.* Paper 981.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/981

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2970

FARIAWATY TJANDRA;
SAMUEL HALIM LIEM,
                    Petitioners

v.

ATTORNEY GENERAL OF
THE UNITED STATES,
                    Respondent

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency Nos. A95-841-010 & A95-841-011

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2006

Before: BARRY, SMITH and ALDISERT, Circuit Judges

(Opinion Filed: June 1, 2006)

OPINION

BARRY, Circuit Judge

The Board of Immigration Appeals ("BIA") denied Fariawaty Tjandra's

application for asylum.[1]  She now petitions for review.  We will deny the petition.

Because we write primarily for the parties, we omit any discussion of facts not relevant to our decision.  Tjandra is an ethnic Chinese Christian from Indonesia.  She fears that she will be persecuted on account of her ethnicity and religion if she returns to Indonesia.  She entered the United States on February 8, 2002. Her visa expired on August 8, 2002.  On September 2, 2002, she filed an application for asylum, withholding of removal, and withholding of removal under the Convention Against Torture ("CAT withholding").  The government served her with a Notice to Appear on October 22, 2002, alleging that she was removable as an alien who had overstayed her visa.  See 8 U.S.C. § 1227(a)(1)(C)(i).  She appeared at hearings before an Immigration Judge ("IJ") on December 4, 2002 and January 29, 2004.  The IJ issued an oral decision at the close of the second hearing.  He rejected her claims for withholding and CAT withholding, but granted the asylum claim.  The government appealed to the BIA, which reversed on May 10, 2005.  This timely petition for review followed.[2]

Only the asylum claim is before us.[3]  The Attorney General has the discretion to

---

[1] Samuel Halim Liem, co-petitioner in this case and Tjandra's husband, was a derivative applicant on her application for asylum.  We will refer solely to Tjandra, as Liem's relevant legal claims are identical to hers.

[2] We have jurisdiction under 8 U.S.C. § 1252.  We review the BIA's findings of fact for support by substantial evidence.  Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001).  "[T]he BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it."  Id.

[3] Although Tjandra alludes to withholding and CAT withholding in her brief to us, she did not raise these claims to the BIA after the IJ denied them.  Instead, in her brief to the

2

grant asylum to an alien who is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is, for present purposes, a person who is unwilling to return to a country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To be well-founded, a subjective fear of persecution must be objectively reasonable. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). The IJ held that here it was because, in the words of the implementing regulations, there was "a pattern or practice in [Indonesia] of persecution of a group of persons similarly situated to the applicant on account of [one of the five listed grounds]."[4] See 8 C.F.R. § 208.13(b)(2)(iii)(A). The BIA reversed this finding on the basis of our decision in Lie v. Ashcroft, 396 F.3d 530 (3d Cir. 2005), in which we upheld a BIA determination that the petitioner had not shown a pattern or practice of persecution of Chinese Christians in Indonesia.

Tjandra first invites us to overrule Lie. We decline the invitation. Prior precedential decisions of this Court are binding on future panels. See, e.g., In re Suprema

BIA, she "adopt[ed] the decision of the Immigration Judge." Accordingly, she has not exhausted available administrative remedies with respect to her withholding and CAT withholding claims and we lack jurisdiction to entertain these claims. 8 U.S.C. § 1252(d)(1).

[4] Other possible ways of showing a well-founded fear are not at issue in this petition. Tjandra stipulated that she had not suffered past persecution in Indonesia. 8 C.F.R. § 208.13(b)(1). She did not challenge the IJ's finding that she had no objectively reasonable fear of being "singled out individually for persecution." Id. § 208.13(b)(2)(iii).

Specialties, Inc. Sec. Litig., 438 F.3d 256, 270 (3d Cir. 2006). Accordingly, we do not consider the argument that Lie was wrongly decided.

Tjandra also asks us to distinguish Lie on the basis of new evidence. In Lie, the BIA had before it the 1999 State Department Country Report on Human Rights Practices for Indonesia. That Country Report led us to write:

> "Petitioners argue, with some force, that anti-Chinese violence persists, citing evidence in the record of widespread attacks on Chinese Christians in Indonesia, including press accounts of riots, vandalism, and robbery targeting Chinese Christians. Nevertheless, such violence does not appear to be sufficiently widespread as to constitute a pattern or practice. The 1999 Country Report on Indonesia indicated that there was a sharp decline in violence against Chinese Christians following the period of intense violence in 1998, and noted that the Indonesian government officially promotes religious and ethnic tolerance. Moreover, this violence seems to have been primarily wrought by fellow citizens and not the result of governmental action or acquiescence. Given these considerations, we are not compelled to find that such attacks constitute a pattern or practice of persecution against Chinese Christians."

Lie, 396 F.3d at 537-38. The record relied upon by the BIA here included the Country Reports for Indonesia from 1998 through 2002, the 2003 State Department International Religious Freedom Report for Indonesia, and a number of newspaper articles.[5] These sources lead us to reach the same conclusion we did in Lie. The Country Reports, in particular, belie any argument that the situation of ethnic Chinese Christians in Indonesia

---

[5] Tjandra submitted the 2003 Country Report with her brief to the BIA, but the BIA "considers only that evidence that was admitted in the proceedings below." Board of Immigration Appeals Practice Manual 62 (2004). She cites extensively to the 2004 Country Report in her brief to us, but our jurisdiction is limited to reviewing "the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

4

has significantly deteriorated. While the Indonesian government continues to discriminate against ethnic Chinese by requiring them to obtain citizenship certificates and continues to drag its heels in investigating the anti-Chinese riots of May 1998, there also continues to be little widespread violence directed at ethnic Chinese or Christians in most parts of Indonesia. The passage of time has increasingly confirmed that the riots were an aberration, not the normal state of affairs. A reasonable factfinder would not be compelled to find that there is a pattern or practice in Indonesia of persecution of ethnic Chinese Christians.

Accordingly, we will deny the petition for review.